MARTHA HILLARY SCHOUT, Plaintiff v. ANNE COOPER SCHOUT and WACHOVIA
BANK & TRUST, N.A., Defendants

No. COA99-1157

(Filed 5 December 2000)

**1. Appeal and Error— appealability—grant of summary judgment—interlocutory order—substantial right**

Although defendant's appeal from the trial court's grant of
summary judgment in favor of plaintiff is from an interlocutory
order, a substantial right is affected by the trial court's order
directing Wachovia to deliver the corpus of an account to plaintiff when defendant is supposed to maintain the assets for plaintiff's educational needs, because: (1) defendant, as custodian of
the monies and securities held in the pertinent Wachovia brokerage account has a right, if not a duty, to preserve those assets for
the benefit of plaintiff and to ensure that they are used for the
purpose intended by the donors; and (2) plaintiff could dispose of
all or most of the assets before this matter comes to a full and
final resolution.

**2. Gifts— Uniform Gifts to Minors Act—Uniform Transfers to
Minors Act—custodianship—age entitled to custodial
property**

The trial court did not err by granting summary judgment to
plaintiff on the issue of whether plaintiff's right to receive the
custodial property held in a Wachovia account created by her
grandparents in December 1980 under the provisions of the North
Carolina Uniform Gifts to Minors Act (UGMA) vested upon her
eighteenth birthday, even though Wachovia on its own accord
established the account under the provisions of the Uniform
Transfers to Minors Act (UTMA) which superseded the UGMA
and provides that a custodianship terminates when the beneficiary becomes twenty-one, because: (1) N.C.G.S. § 33A-22(b) provides that all UTMA provisions, including those regarding the age
of majority, apply to custodial relationships created under the
UGMA unless the application of any provision would impair a
constitutionally vested right or extend the duration of a relationship in existence on 1 October 1987; and (2) N.C.G.S. § 33A-22(c)
prohibits application of the UTMA's age provisions to custodianships created outside of the UGMA, if they terminated before 1
October 1987 as a result of the minor reaching majority age.

**3. Setoff and Recoupment— out-of-pocket payments—additional time to state claim**

The trial court did not deprive defendant custodian of the monies and securities held in a Wachovia brokerage account of a reasonable opportunity to pursue her right of setoff for her out-of-pocket payments toward plaintiff's education, because even though defendant failed to assert a counterclaim alleging her right of setoff, the trial court allowed her additional time to state her claim by directing Wachovia not to release $125,000 of the funds in the brokerage account until the expiration of 30 days or a further order of the court directed a release of the funds.

Appeal by defendant Anne Cooper Schout from order entered 22 June 1999 by Judge Marcus Johnson in Superior Court, Mecklenburg County. Heard in the Court of Appeals 17 August 2000.

*Templeton & Raynor, P.A., by Kenneth R. Raynor and Erik A. Schwanz, for plaintiff-appellee.*

*Joe T. Millsaps for defendant-appellant Anne Cooper Schout.*

TIMMONS-GOODSON, Judge.

Anne Cooper Schout (hereinafter, "defendant") appeals from an order of partial summary judgment directing Wachovia Bank and Trust to deliver to Martha Hillary Schout (hereinafter, "plaintiff") all funds, with the exception of $125,000, held in account No. 101-10522-1-2. Having carefully considered the record, briefs, and arguments of counsel, we affirm the ruling of the trial court.

The facts relevant to this appeal are summarized as follows: Plaintiff, defendant's daughter, was born on 30 November 1980. When plaintiff was three weeks old, defendant's parents, Mr. and Mrs. P. H. Cooper, gave plaintiff one hundred shares of Abbott Laboratory Stock to be used for her education. The gift was made pursuant to the provisions of the North Carolina Uniform Gifts to Minors Act (hereinafter, the "UGMA"), and defendant was appointed to serve as custodian of the stock. Under the UGMA, the custodial relationship was to terminate when plaintiff attained eighteen years of age. *See* N.C. Gen. Stat. § 33-68 (1) (1986) (now repealed).

In 1981, the original 100 shares of Abbott stock split 2 for 1, and at the advice of the donors, defendant opened a dividend reinvestment account for the stock splits at Bank of Boston. In December of

1981, the Coopers gave plaintiff an additional 200 shares of Abbott stock. All stock splits and all dividends earned from the stock were deposited into the Bank of Boston account.

For several years, defendant allowed the stock to grow and financed plaintiff's education with her own funds. Then, in the summer of 1994, defendant found it necessary to sell some of the stock to help pay plaintiff's private school tuition. Consequently, defendant transferred 300 shares of Abbott stock to a brokerage account, No. 101-10522-1-2, at Wachovia Bank and Trust (hereinafter, "Wachovia"), which procured the sale. The bank, on its own accord, established the account under the provisions of the Uniform Transfers to Minors Act (hereinafter, the "UTMA"), which became effective 1 October 1987 and superseded the UGMA. *See generally,* N.C. Gen. Stat. § 33A-1, *et seq.* (1999). Under the UTMA, a custodianship terminates when the beneficiary becomes twenty-one years old. N.C. Gen. Stat. § 33A-20(1) (1999).

Defendant had additional shares of stock sold in 1997 to pay a portion of plaintiff's tuition. The profits from the sale also went toward the purchase of a car and computer for plaintiff. In 1998, after becoming dissatisfied with the services rendered by Bank of Boston, defendant closed the dividend reinvestment account with the institution and transferred all remaining stock and dividends to the Wachovia brokerage account. Later that year, defendant authorized the sale of 300 to 400 shares of stock, the proceeds of which paid the tuition for the first semester of plaintiff's senior year at Country Day.

Plaintiff reached her eighteenth birthday on 30 November 1998. One month later, she dropped out of school and moved to Atlanta, Georgia with a man who was ten years her senior and had no discernible means of support. In response to plaintiff's behavior, defendant caused 3,100 shares of stock to be sold in order to recoup the money she had spent on plaintiff's private school education. The sale proceeds were deposited in the Wachovia brokerage account.

Following her eighteenth birthday, plaintiff demanded custody and control of the assets in Wachovia account No. 101-10522-1-2, i.e., more than 3,000 shares of Abbot stock and approximately $150,000 in cash. Citing the provisions of the UTMA, defendant claimed that plaintiff was not entitled to the funds, as she had not yet attained the age of twenty-one. On 26 January 1999, plaintiff filed a complaint

against defendant and Wachovia alleging breaches of common law fiduciary duties, breaches of fiduciary duties under the UGMA, and conversion. Plaintiff also sought a writ of mandamus directing Wachovia to transfer all monies and securities remaining in the account to plaintiff. On cross-motions of the parties for summary judgment, the trial court entered an order directing Wachovia to surrender all funds held in account No. 101-10522-1-2, with the exception of $125,000, to which defendant claims a right of set-off. From this order of partial summary judgment, defendant appeals.

---

[1] Before proceeding to the merits of defendant's arguments, we must determine whether the present appeal is premature. To be sure, the order from which defendant appeals is interlocutory, in that it disposes of fewer than all of the claims between the parties. The record does not show that the trial court certified the order as immediately appealable pursuant to Rule 54(b) of our Rules of Civil Procedure. Hence, the propriety of this appeal turns on whether the order at issue adversely affects a substantial right of defendant. We conclude that it does.

As our Supreme Court recognized in *Waters v. Personnel, Inc.*, 294 N.C. 200, 240 S.E.2d 338 (1978), "the 'substantial right' test for appealability of interlocutory orders is more easily stated than applied." *Id.* at 208, 240 S.E.2d at 343. The reason for the difficulty in applying the test is that "[i]t is usually necessary to resolve the question in each case by considering the particular facts of that case and the procedural context in which the order from which appeal is sought was entered." *Id.* The test has two prongs: First, the right affected by the order of the trial court must be a "substantial" one. *J & B Slurry Seal Co. v. Mid-South Aviation, Inc.*, 88 N.C. App. 1, 5, 362 S.E.2d 812, 815 (1987). A "substantial right" is "a legal right affecting or involving a matter of substance as distinguished from matters of form: a right materially affecting those interests which a man is entitled to have preserved and protected by law: a material right." *Oestreicher v. Stores*, 290 N.C. 118, 130, 225 S.E.2d 797, 805 (1976) (adopting the definition of "substantial right" appearing in Webster's Third New International Dictionary (1971)), *declined to follow on other grounds, Day v. Coffey*, 68 N.C. App. 509, 315 S.E.2d 96 (1984). The second prong of the test is that the ability to enforce the right "must be lost, prejudiced or . . . less than adequately protected by exception to entry of the interlocutory order." *J & B Slurry*, 88 N.C. App. at 6, 362 S.E.2d at 815.

SCHOUT v. SCHOUT

[140 N.C. App. 722 (2000)]

In the case *sub judice*, defendant, as custodian of the monies and securities held in Wachovia brokerage account No. 101-10522-1-2, has a right, if not a duty, to preserve those assets for the benefit of plaintiff and to ensure that they are used for the purpose intended by the donors. We are of the opinion that this right is substantial and that the order of the trial court directing Wachovia to deliver the corpus of the account to plaintiff jeopardizes defendant's right to maintain the assets for plaintiff's educational needs. Furthermore, since plaintiff could dispose of all or most of the assets before this matter comes to a full and final resolution, prompt review of the order is necessary to protect defendant's right. Therefore, we hold that defendant's appeal is properly before us, and we turn now to the questions presented.

[2] Defendant argues first that the trial court erroneously granted summary judgment to plaintiff on the issue of whether plaintiff's right to receive the custodial property held in Wachovia account No. 101-10522-1-2 vested upon her eighteenth birthday. Defendant contends that pursuant to the provisions of the UTMA, plaintiff is not entitled to possession and control of the property until she reaches twenty-one. We must disagree.

Summary judgment is appropriate if the moving party demonstrates that the pleadings, depositions, and other evidentiary materials create no triable issue of fact and that the movant is entitled to judgment as a matter of law. *Lynn v. Burnett*, 138 N.C. App. 435, 437-38, 531 S.E.2d 275, 278 (2000). The moving party may achieve this result in one of two ways:

> "(1) by showing that an essential element of the opposing party's claim is nonexistent; or (2) [by] demonstrating that the opposing party cannot produce evidence sufficient to support an essential element of the claim or overcome an affirmative defense which would work to bar [her] claim."

*Whitman v. Kiger*, 139 N.C. App. 44, 46, 533 S.E.2d 807, 807-08 (2000) (quoting *Wilhelm v. City of Fayetteville*, 121 N.C. App. 87, 89, 464 S.E.2d 299, 300 (1995) (citation omitted)). The trial court, in deciding whether summary judgment is proper, must examine the evidence in the light most favorable to the non-moving party, drawing all legitimate inferences and intendments to her advantage. *Meares v. Jernigan*, 138 N.C. App. 318, 320, 530 S.E.2d 883, 885 (2000).

In matters of statutory construction, this Court's task is to effectuate the intent of the legislature, *Whitman*, 139 N.C. App. at 46, 533

S.E.2d at 808, which is revealed in "the language of the statute, the spirit of the statute, and what it seeks to accomplish," *State ex rel. Utilities Commission v. Public Staff*, 309 N.C. 195, 210, 306 S.E.2d 435, 444 (1983). A statute that is facially clear and unambiguous, however, requires no judicial construction. *Carrington v. Brown*, 136 N.C. App. 554, 558, 525 S.E.2d 230, 234, *disc. review denied*, 352 N.C. 147, 543 S.E.2d 892 (2000). Instead, we "must give it its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein." *Id.* (quoting 27 Strong's North Carolina Index 4th, *Statutes* § 28 (1994) (footnotes omitted)). Moreover, where multiple statutory provisions address the same subject matter, they must be construed together and harmonized, if possible, so that each provision is given effect. *Jordan v. Foust Oil Company*, 116 N.C. App. 155, 163, 447 S.E.2d 491, 496 (1994).

The parties in the instant case do not dispute that the 1980 and 1981 gifts of Abbott stock were made pursuant to the UGMA and that at the time of the gifts, the age of majority in North Carolina was eighteen. As previously noted, however, the UGMA was repealed effective 1 October 1987 and was superseded by the UTMA, under which a custodianship terminates upon "[t]he minor's attainment of 21 years of age." N.C. Gen. Stat. § 33A-20 (1999). As to the effect of the new statute on existing custodial relationships, section 33A-22 of the UTMA relevantly provides as follows:

> (b) This Chapter applies to all transfers made before October 1, 1987, in a manner and form prescribed in the Uniform Gifts to Minors Act of North Carolina, except insofar as the application *impairs constitutionally vested rights or extends the duration of custodianships in existence on October 1, 1987.*

> (c) G.S. 33A-1 and G.S. 33A-20 with respect to the age of a minor for whom custodial property is held under this Chapter shall not apply to custodial property held in a custodianship that terminated because of the minor's attainment of the age of majority and before October 1, 1987.

N.C. Gen. Stat. § 33A-22 (b) & (c) (1999).

Plaintiff argues that under the plain language of section 33A-22(b), the UTMA age provisions do not apply to the custodianship established for her by her grandparents, because to do so would "impair[] [her] constitutionally vested rights" and would "extend[] the

duration of [the] custodianship[].” *See id.* Plaintiff, therefore, contends that the custodianship terminated on her eighteenth birthday. Defendant, on the other hand, takes the position that section 33A-22(c) excludes application of the UTMA age provisions only where the custodianship terminated prior to 1 October 1987 as a result of the minor reaching the age of majority. Thus, defendant asserts that the custodianship at issue here continues until plaintiff reaches the age of twenty-one.

Contrary to defendant's position, we do not believe that sections 33A-22(b) and (c) are repugnant. Section 33A-22(b) speaks only to “transfers made . . . in a manner and form prescribed in the Uniform Gifts to Minors Act.” N.C.G.S. § 33A-22(b). The UGMA was but one means of transferring property to minors, *see* N.C. Gen. Stat. § 33-76(b) (1986) (now repealed) (explaining that UGMA provided alternative, and not exclusive, method for making gifts to minors), and the Act dealt solely with gifts of securities, money, and life insurance, *see* N.C. Gen. Stat. §§ 33-69(a), 33-68(5)a (1986) (now repealed). It follows then that prior to 1 October 1987, the effective date of the UTMA, there existed custodianships outside of the UGMA. These custodianships, we conclude, are the focus of section 33A-22(c).

Accordingly, we construe section 33A-22(b) to mean that all UTMA provisions, including those regarding the age of majority, apply to custodial relationships created under the UGMA, unless the application of any provision would impair a constitutionally vested right or extend the duration of a relationship in existence on 1 October 1987. In turn, we interpret section 33A-22(c) to prohibit application of the UTMA's age provisions to custodianships created outside of the UGMA, if they terminated before 1 October 1987 as a result of the minor reaching majority age. We, therefore, hold that under section 33A-22(b), the custodianship in question terminated when plaintiff attained eighteen years of age, and the trial court correctly entered summary judgment for plaintiff on the issue of whether she is entitled to custody and control of the custodial property.

[3] Defendant further argues that the order of the trial court deprived her of a reasonable opportunity within which to pursue her right of set-off for her out-of-pocket payments toward plaintiff's education. However, notwithstanding that defendant failed to assert a counterclaim alleging her right of set-off, the court graciously allowed her additional time to state her claim, directing Wachovia not to release $125,000 of the funds in account No. 101-10522-1-2 “until the expiration of 30 days, or a further order of this Court di-

recting a release of the funds, whichever occurs first." As we find nothing unreasonable about the court's order, we reject defendant's argument.

Based upon the foregoing, we affirm the order of summary judgment for plaintiff.

Affirmed.

Judges WYNN and McGEE concur.