ELIZABETH S. BARNES AND KATHRYN ANN CLARY, PLAINTIFFS v. WANDA MONICAL KOCHHAR, ANIL KOCHHAR, OUTCOMES, INC., ODIS, LLC AND PRECISION ABSTRACTIONS, INC., DEFENDANTS

No. COA05-1452

(Filed 18 July 2006)

**1. Appeal and Error— appealability—appointment or denial of receiver**

The appointment or denial of a receiver is a matter of discretion under current jurisprudence, to be reviewed under statutes dealing with interlocutory appeals, which allow an immediate appeal for the loss of substantial rights.

**2. Appeal and Error— appealability—denial of appointment of receiver—substantial rights**

The denial of plaintiffs' motion for appointment of a receiver was immediately appealable. Plaintiffs' right to preservation of assets and corporate opportunities of the company founded by plaintiff Barnes and defendant Wanda Kochhar (Precision) was substantially affected by the denial of a receiver. The failure to appoint a receiver for questions involving the management of a related company (Outcomes) to which Kochhar allegedly transferred Precision's corporate opportunities did not involve a substantial right since plaintiffs are not shareholders of Outcomes.

**3. Receivership— appointment—not established as matter of right**

The appointment or denial of a receiver is within the discretion of the court. Plaintiffs were not entitled to a receiver as a matter of law even if they had, as they argued, established that defendant Kochhar had usurped corporate opportunities.

Appeal by plaintiffs from order entered 16 June 2005 by Judge Richard D. Boner in Mecklenburg County Superior Court. Heard in the Court of Appeals 17 May 2006.

*Bishop, Capitano & Moss, P.A., by J. Daniel Bishop, for plaintiffs-appellants.*

*Arthur A. Vreeland for defendants-appellees Anil Kochhar and ODIS, L.L.C.*

*Guthrie, Davis, Henderson & Staton, P.L.L.C., by Dennis L. Guthrie and Kevin W. Tydings, for defendants-appellees Wanda Monical Kochhar and Outcomes, Inc.*

CALABRIA, Judge.

Elizabeth S. Barnes ("Barnes") and Kathryn Ann Clary ("Clary") (collectively "plaintiffs") appeal from an order denying their motions for partial summary judgment and appointment of a receiver. We affirm.

In their complaint, plaintiffs alleged the following facts pertinent to this appeal:

5. Barnes approached [Wanda Monical Kochhar ("Kochhar")] in October 2000 to seek her advice about starting a business to engage in furnishing nurse-conducted medical record abstracting/investigating and reporting services for Managed Care Organizations (MCOs) and Pharma companies in connection with HEDIS and Health Outcome Studies. HEDIS studies are performed annually by MCOs for the purpose of becoming/remaining competitive within their market and/or acquiring and then maintaining national accreditation. . . .

6. Working together, Barnes and Kochhar identified the requirements for starting such a business. Kochhar suggested that $100,000 of startup capital would be required, and expressed interest in being involved in such a business with Barnes, but made it clear that she would not furnish any capital. Barnes and another prospective owner raised from relatives and/or personally furnished $100,000 of operating capital to fund the business, which they decided to name Precision Abstractions. Of the $100,000 total, Clary provided $30,000 in the form of a loan. Kochhar undertook to form Precision Abstractions as a North Carolina corporation, which it remains at the filing of this complaint. Kochhar, Barnes[,] and Cathy Donnelly each received one-third of the originally issued shares of Precision Abstractions' stock.

7. The new business met with considerable success from its inception, generating approximately $350,000 in revenues in the first season. . . . In general, Kochhar furnished sales and administrative services and Barnes managed operations. Donnelly acted as one of the Company's nurse-abstractors.

8. After the company's first season, Donnelly withdrew in a negotiated buyout.

9. Also at the conclusion of the company's first season, Precision Abstractions repaid all outstanding loans, with interest. This included Clary's loan of $30,000. Immediately thereafter, however, Clary reinvested the $30,000 by purchasing from Kochhar and Barnes shares equal to five percent of nonvoting stock of Precision Abstractions. . . .

10. As of July 2001, following Donnelly's withdrawal, Kochhar and Barnes each held 50% of the voting shares of Precision Abstractions. They also each owned 47.5 percent of nonvoting shares, with Clary owning five percent. Since August 2001, Kochhar has held the titles of president and secretary of the corporation, and Barnes has been vice president and assistant secretary. Kochhar and Barnes have also been Precision Abstractions' sole directors.

11. From the commencement of Precision Abstractions' operations, Barnes trusted Kochhar to tend to such executive management matters on behalf of Precision Abstractions as maintaining internal accounting and procuring outside professional services because Kochhar claimed and possessed greater experience and knowledge of such matters. With respect to sales functions, Barnes participated in limited ways, but again trusted Kochhar to handle the responsibility in accordance with their general division of labor. Barnes expected Kochhar to conduct all of her activities with due regard for and loyalty to Precision Abstractions. She also expected, by virtue of her half-ownership of the voting shares and her equal representation on the Board of Directors, to be consulted, fully informed, and asked to consent to any transaction effecting a material change in Precision Abstractions' business.

12. In May 2001, without any advance notice to Barnes, Kochhar . . . formed another North Carolina corporation under the name Monical and Associates, Inc. In July 2001, ostensibly for purposes of managing taxable income, Kochhar stated to Barnes that Monical and Associates would "enter into an agreement with Precision to provide management and development services for 2001." Kochhar told Barnes that "Monical and Associates" was a trade name she had used for years for consulting. Kochhar did not disclose that the business had been newly incorporated.

13. Kochhar represented that by contracting to prepay fees to Monical and Associates for management and sales services for the next HEDIS season, Precision Abstractions could minimize taxable income resulting from the completed 2000-2001 season. Otherwise, Kochhar explained, greater taxable income would be imputed to Barnes and Kochhar because Precision Abstractions had elected Subchapter S status under the Internal Revenue Code.

14. In an e-mail, Kochhar also suggested that an agreement be reached in the following year "with Precision for subcontracting nurses." Barnes was not asked for her consent to this proposal at this time or thereafter and, to her knowledge, an early draft of a services agreement with Monical and Associates was never finalized or executed. Nevertheless, Kochhar assured Barnes that the arrangement she contemplated would return to Precision Abstractions "a fair profit margin to be distributed to the partners on a pro rata basis." Barnes is unaware of any express agreement under which Precision Abstractions subcontracted nursing services to Monical and Associates or vice versa.

15. In August 2001, following discussions about the need for a more recognizable trade name, Kochhar presented to Barnes the name "Outcomes," together with logo artwork. Kochhar suggested that Precision Abstractions' services be sold under the Outcomes name. Barnes understood Kochhar's proposal as a branding concept to promote the business of Precision Abstractions. Barnes thought the trade name was a good idea and had no notice or understanding that it would be used in any way other than to promote the business and best interests of Precision Abstractions.

16. Upon information and belief, Kochhar used the name Outcomes to promote HEDIS-related services rendered by Precision Abstractions and contracted under that name for the rendition of such services. Unbeknownst to Barnes at that time, however, Kochhar had caused Monical and Associates to change its corporate name to Outcomes on August 1, 2001.

17. In late 2001, Kochhar made reference in one or more writings to the notion that she shared ownership of Precision Abstractions with Barnes and Clary, but that she owned Outcomes herself. When Barnes challenged or questioned such statements, Kochhar

BARNES v. KOCHHAR

[178 N.C. App. 489 (2006)]

claimed to mean only that Outcomes was the entity through which she engaged in her consulting practice independent of the nurse-abstracting business.

18. In Precision Abstractions' second season, concluding in June 2002, upon information and belief, HEDIS-related revenues were approximately $750,000. Kochhar, who lived and conducted her business activities in Charlotte, maintained exclusive knowledge and control of the receipt and disposition of revenues and accounting therefor. Barnes, who lived and worked in Kentucky with periodic visits to Charlotte, received no reports or data concerning the results of operations of either Precision Abstractions or Outcomes in the second season until June 2003. At that time, Barnes received from Kochhar copies of income tax returns prepared for Precision Abstractions, reporting its revenues for 2002 at slightly in excess of $300,000. Accordingly, upon information and belief, approximately $450,000 of HEDIS-related revenues for the second season were paid over to or retained by Outcomes. Barnes was not advised or consulted concerning any allocation of revenues as between Precision Abstractions and Outcomes, nor was she given an opportunity to approve or disapprove any payment or diversion of funds to Outcomes.

19. For the third season, end[ing] in June 2003, upon information and belief, Kochhar caused client contracts again to be made in the name of Outcomes for the services provided by Precision Abstractions. Upon information and belief, HEDIS-related revenues of approximately $3.5 million were anticipated based upon third-season contracts.

20. Although Kochhar and Barnes remained officers and directors of Precision Abstractions, Kochhar also referred to Barnes in written communications as holding various executive offices of Outcomes. When Barnes inquired of Kochhar the meaning of such designations, Kochhar assured her that they were only for the purpose of presenting a proper marketing image and otherwise insignificant. Barnes was unconcerned with titles, but generally expected the right to participate in and to exercise equal voice in all significant management decisions of the business. Kochhar generally appeared to accord Barnes such status, informing her of proposed actions and abandoning some that Barnes resisted.

. . .

22. Increasingly throughout Fall 2002, however, Kochhar began adopting a condescending and progressively unilateralist tone in e-mail communications with Barnes. . . . Kochhar also then designated her husband, Anil Kochhar, as CEO and president of Outcomes, and instructed Barnes that she would report to him. Kochhar also paid compensation to her daughter, who was a full-time student, and did not, to Barnes' knowledge, render substantial services to the business. Kochhar did not ask for or receive Barnes' consent for these actions.

23. Barnes confronted Kochhar about these actions in December 2002. At that time, Kochhar told Barnes that Outcomes was her company with its own Board of Directors to which Barnes did not belong. Barnes asked Kochhar how Precision Abstractions' interests would be protected if that were true. Kochhar assured her that they would be.

24. For the duration of the third-season HEDIS work, Barnes performed her responsibilities and awaited the fulfillment of Kochhar's promise to protect the interests of Precision Abstractions. Finally, in early June 2003, Kochhar told Barnes that she believed their partnership was not working out and that she was going to dissolve the relationship between Outcomes and Precision Abstractions. She invited Barnes to buy out her interest in Precision Abstractions. She requested Barnes' consent and prompt response. Before receiving any response, Kochhar instructed an attorney whom she had selected for Precision Abstractions that she and Barnes had agreed in principle to dissolve Precision Abstractions and requested documents be prepared for signature.

25. By letter dated June 13, 2003, Kochhar sent Barnes a letter stating, "effective immediately, Outcomes, Inc. is terminating its business relationship(s) with Precision Abstractions, Inc.," and demanding return of "information proprietary to Outcomes." Kochhar also transmitted proposed shareholders and directors consents for the dissolution of Precision Abstractions and the 2002 internal financial reports, tax returns and K-1's for Precision Abstractions referenced previously. Barnes has not agreed to Precision Abstractions' dissolution nor executed the proposed shareholders/directors consents.

26. Kochhar has failed to consult with Barnes or obtain her consent for any allocation of revenues among Outcomes and

Precision Abstractions in respect of the second and third HEDIS seasons. Upon information and belief, Kochhar has caused Outcomes to retain substantially all of the profits from these business activities.

27. After preliminary communications in opposition to these actions were ignored, Barnes, through counsel, made demand upon Kochhar, in her capacity as officer and director of Precision Abstractions to initiate and cooperate in all respects with all available actions to restore to Precision Abstractions the benefit of all corporate opportunities unlawfully usurped by her for the benefit of Outcomes. . . .

Based on these allegations, on 7 November 2003, plaintiffs filed a complaint against Kochhar, Outcomes, Inc., and Precision Abstractions, Inc. (collectively "defendants"), with claims for relief based upon, *inter alia*, fraud, usurpation of corporate opportunities, fraudulent conveyances, and unfair and deceptive trade practices. In the complaint, plaintiffs also claimed that Outcomes is an alter ego of Precision Abstractions, and plaintiffs sought restitution, a resulting trust, and a constructive trust. Defendants filed a counterclaim, claiming breach of fiduciary duties by Barnes, and requested judicial dissolution of Precision Abstractions, Inc. as well as recovery of reasonable expenses including counsel fees. On 4 August 2004, plaintiffs filed motions, *inter alia*, for appointment of a receiver for Outcomes[1] and to amend the complaint in order to join as additional defendants Anil Kochhar and ODIS, LLC. Appellees consented to the amended complaint. On 28 March 2005, plaintiffs renewed the motion for appointment of a receiver, and the trial court denied the motion on 16 June 2005. Plaintiffs gave notice of appeal from the denial of the appointment of a receiver on 18 July 2005. Defendants subsequently filed motions to dismiss the appeal as interlocutory.

[1] Plaintiffs argue the denial of an appointment of a receiver is not interlocutory and direct this Court to our Supreme Court's holding in *Jones v. Thorne*, 80 N.C. 72 (1879). In *Thorne*, our Supreme Court reviewed and affirmed an order *denying* a receiver; thus, when an appellant appealed the subsequent *appointment* of a receiver on

---

1. Defendants Anil Kochhar and ODIS, LLC, have filed a reply brief in this case arguing against appointment of a receiver for ODIS, LLC. From our review of the motions in this case, it is unclear that plaintiffs ever requested a receiver for ODIS, LLC. However, even if plaintiffs did request a receiver for ODIS, LLC, it has abandoned the issue on appeal by failing to argue any error regarding denial of the appointment of a receiver for ODIS, LLC. *See* N.C. R. App. P. 28(b)(6) (2006).

the same underlying facts, our Supreme Court held the previous determination was *res adjudicata. Id.*, 80 N.C. at 75. In that case, our Supreme Court stated the rule, "granting or refusing an order for . . . the appointment of a receiver is not a mere matter of discretion in the judge, and either party dissatisfied with his ruling may have it reviewed [immediately]." *Id.*, 80 N.C. at 75. Our Supreme Court made this, now dated, statement in 1879 prior to our General Assembly's passage of statutes specifically dealing with the issue of interlocutory appeals. *See* N.C. Gen. Stat. §§ 1A-1, Rule 54(b); 1-277(a); 7A-27(d)(1) (2005). Additionally, under our current jurisprudence, when properly on appeal, we review orders concerning appointment or denial of a receiver under an abuse of discretion standard. *Williams v. Liggett*, 113 N.C. App. 812, 815, 440 S.E.2d 331, 333 (1994). In other words, the denial or appointment of a receiver is now "a mere matter of discretion." *See Thorne, supra.*

Because of these jurisprudential changes, we revisit the issue of whether, on these facts, the *denial* of an appointment of a receiver is interlocutory under current statutory law as interpreted by our courts.[2] "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Little v. Stogner*, 140 N.C. App. 380, 382, 536 S.E.2d 334, 336 (2000) (internal quotations omitted). "Generally, there is no right of immediate appeal from an interlocutory order." *Abe v. Westview Capital*, 130 N.C. App. 332, 334, 502 S.E.2d 879, 881 (1998). However, an interlocutory order can be immediately appealed by either of two methods. *N.C. Dept. of Transp. v. Page*, 119 N.C. App. 730, 734, 460 S.E.2d 332, 334 (1995). First, an interlocutory order can be appealed pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b) (2005) if the trial court certifies the case for appeal and judgment is final as to some but not all claims. *Id.* Second, under N.C. Gen. Stat. §§ 1-277(a) and 7A-27(d)(1) an interlocutory order can be immediately appealed

---

2. Our courts have on several occasions considered interlocutory appeals of *appointments* of receivers without expressly addressing the issue of whether the appellant established a substantial right. *See, e.g., Lowder v. All Star Mills, Inc.*, 301 N.C. 561, 576-77, 273 S.E.2d 247, 256 (1981); *York v. Cole*, 251 N.C. 344, 345, 111 S.E.2d 334, 335 (1959); *Liggett*, 113 N.C. App. at 815, 440 S.E.2d at 333. *But see Barnes v. St. Rose Church of Christ, Disciples of Christ*, 160 N.C. App. 590, 591, 586 S.E.2d 548, 550 (2003) (holding, in part, on the facts of that case the appointment of a receiver was interlocutory). We do not address these cases in determining whether a substantial right exists on these facts both because the facts before us present the *denial* of a receiver and because whether there is a substantial right is normally assessed on a case-by-case basis. *Waters v. Personnel, Inc.*, 294 N.C. 200, 208, 240 S.E.2d 338, 343 (1978).

if the trial court's holding: 1) deprives an appellant of a substantial right that would be lost without immediate appellate review, 2) "[i]n effect determines the action and prevents judgment from which appeal might be taken," 3) "[d]iscontinues the action," or 4) "[g]rants or refuses a new trial." *Lamb v. Lamb*, 92 N.C. App. 680, 683, 375 S.E.2d 685, 686 (1989) (citations omitted).

We consider whether plaintiffs have established a substantial right. In determining whether an issue affects a "substantial right," our Supreme Court has stated that "the 'substantial right' test for appealability of interlocutory orders is more easily stated than applied." *Waters*, 294 N.C. at 208, 240 S.E.2d at 343. Our courts apply a two-part test in determining whether a substantial right exists: 1) that the right in question qualifies as "substantial" and 2) that, absent immediate appeal, the right will be "lost, prejudiced or less than adequately protected by exception to entry of the interlocutory order." "A 'substantial right' is 'a legal right affecting or involving a matter of substance as distinguished from matters of form: a right materially affecting those interests which a man is entitled to have preserved and protected by law: a material right.' " *Schout v. Schout*, 140 N.C. App. 722, 725, 538 S.E.2d 213, 215 (2000). "It is usually necessary to resolve the question [of whether there is a substantial right] in each case by considering the particular facts of that case and the procedural context in which the order from which appeal is sought was entered." *Waters*, 294 N.C. at 208, 240 S.E.2d at 343.

[2] Plaintiffs claim that a substantial right is at issue because

despite being holder of 50% of the voting shares of Precision, [Plaintiff Barnes] has suffered complete and continuing impairment of her right to participate in the management of its corporate business and opportunities and to veto corporate decisions since Defendant Wanda Kochhar physically locked her out of the corporate offices and severed the relationship between Precision and Outcomes, Inc., to which Kochhar had transferred all of Precision's business opportunities.

In support of their argument that they have proven a substantial right based on impaired ability to manage, plaintiffs cite *Action Community Television Broadcasting Network, Inc. v. Livesay*, 151 N.C. App. 125, 129, 564 S.E.2d 566, 569 (2002), which recognized "a shareholder's ability to manage his or her own closely held corporation is significant." However, on the facts of this case, plaintiff Kochhar has lost no substantial right to the management of *Outcomes*

**BARNES v. KOCHHAR**

[178 N.C. App. 489 (2006)]

since plaintiffs are not shareholders of Outcomes and have no right to manage Outcomes; rather, plaintiffs are shareholders of Precision.

Plaintiffs also argue that a substantial right exists because "by virtue of Kochhar's control (through Outcomes) over all of the assets and business opportunities that originated with Precision, such property is subject to risk of loss or further removal." Specifically, plaintiffs allege,

> The continuing series of transactions in this case have already caused injuries and threaten to cause more. Large and increasing officer salaries, transfers of intellectual property rights and other assets, undertaking of debt and lease obligations, new business ventures, the prospect of business entanglements (such as grants of equity interests), the removal of [Outcomes's] corporate headquarters from this State, and the individual defendants' exclusive control over ongoing revenues and profits all threaten irreversible injuries to [plaintiffs].

Plaintiffs report, as examples: 1) While paying Precision no profit, Kochhar hired Anil Kochhar and her daughter (who was a full-time student) to work at Outcomes for salaries of $200,000 and $138,000 respectively; 2) "[a]fter Kochhar's receipt of a derivative demand preliminary to the filing of this action in 2003, Outcomes transferred ownership of custom software developed with revenues from Precision's business opportunities to a new limited liability company, ODIS, LLC [which is owned by Kochhar's husband, Anil Kochhar]," and plaintiffs allege that Outcomes then licensed back the software for an annual fee more than four times the sale price; 3) "[a]ll of Outcomes's investments were financed with cash from HEDIS revenues and proceeds of a line of credit secured by Outcomes's receivables and HEDIS contract rights"; and 4) "Outcomes . . . bought over $316,000 of equipment and leased equipment worth another $211,792 [using what are alleged to be Precision's assets]."

Based on the facts of this case, we hold that plaintiffs' right to preservation of what they allege are Precision's assets and corporate opportunities has been substantially affected by the trial court's denial of the appointment of a receiver. *See Schout*, 140 N.C. App. at 726, 538 S.E.2d at 216 (recognizing that preservation of assets, on those facts by a custodian for a client's benefit, can be a substantial right). Plaintiffs have also shown, absent immediate appellate review, that these substantial rights will be "lost, prejudiced or be less than adequately protected." *Id.*, 140 N.C. App. at 725, 538 S.E.2d at 215

(recognizing irreparable harm when a party could dispose of all or most of the assets before this matter comes to a full and final resolution). Although Outcomes is currently a solvent corporation, plaintiffs have provided concrete examples of irreparable harm including the depletion of assets that allegedly belong to Precision, the transfers of proprietary software allegedly developed with Precision's assets, the creation of lease agreements allegedly financed through Precision's assets, and purchases by Outcomes secured by Precision's assets. Accordingly, on these facts, in light of the alleged relationship between Precision and Outcomes, including the fact that the alleged assets of Precision may be in the hands of a faithless fiduciary, plaintiffs have established a substantial right to preservation of what are alleged to be Precision's assets.

[3] Holding that the trial court's denial of an appointment of a receiver can be immediately appealed on these facts, we next consider whether the trial court properly denied the appointment of a receiver. A receiver may be appointed by a trial court both pursuant to statute and the trial court's inherent authority. *Lowder*, 301 N.C. at 577, 273 S.E.2d at 256. North Carolina General Statutes § 1-502 (2005) states, in applicable part,

A receiver *may* be appointed—

(1) Before judgment, on the application of either party, when he establishes an apparent right to property which is the subject of the action and in the possession of an adverse party, and the property or its rents and profits are in danger of being lost, or materially injured or impaired; except in cases where judgment upon failure to answer may be had on application to the court.

(Emphasis added). Additionally, this Court has held, "the Supreme Court indicated that a court of equity has the 'inherent power to appoint a receiver, notwithstanding specific statutory authorization.'" *Liggett*, 113 N.C. App. at 816, 440 S.E.2d at 333. On appeal from the appointment or denial of a receiver, we review the trial court's determination under an abuse of discretion standard. *Liggett*, 113 N.C. App. at 815, 440 S.E.2d at 333.

Plaintiffs initially argue that they "showed entitlement to a receiver by establishing as a matter of law that defendant Kochhar usurped corporate opportunities and that her defenses are legally insufficient." We reject this argument because even assuming *arguendo* that plaintiffs had established that defendant Kochhar had

usurped corporate opportunities as a matter of law,[3] this would not necessarily result in entitlement to a receiver. Rather, appointment of a receiver is within the discretion of the trial court. *Murphy v. Murphy*, 261 N.C. 95, 101, 134 S.E.2d 148, 153 (1964) (standing for the proposition that receivership is a harsh remedy that will be granted only in the absence of another safe or expedient remedy). *See also Liggett*, 113 N.C. App. at 816, 440 S.E.2d at 333 (stating "a receiver should be appointed for a going, solvent corporation only in rare and drastic situations"). Accordingly, we hold that plaintiffs' first argument on appeal is without merit.

We next consider plaintiffs' second argument that "a receiver should have been appointed." This second argument is based on plaintiffs' first argument that they established liability as a matter of law and thus a receiver *must* have been appointed. Having previously rejected this argument, we likewise hold that plaintiffs' second argument on appeal is without merit.

Plaintiffs have failed to argue their remaining assignments of error on appeal, and we deem them abandoned pursuant to N.C. R. App. P. 28(b)(6) (2006).

Affirmed.

Judges BRYANT and ELMORE concur.

---

3. We do not reach the issue of whether the trial court erred in denying plaintiffs' motion for partial summary judgment because it is interlocutory and not essential to our resolution of whether the trial court erred in denying the appointment of a receiver.