Carter v. Lail, 2018 NCBC 47.

STATE OF NORTH CAROLINA

COUNTY OF CATAWBA

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 1774

REBECCA L. CARTER, in her
individual capacity and derivatively
for the benefit of, on behalf of and
right of nominal party CLL
INVESTMENTS LIMITED
PARTNERSHIP, L.L.P.,

Plaintiff,

v.

GARY N. LAIL, DAVID LAIL, and
the ESTATE OF CLYDE L. LAIL, by
Jennifer Noble, successor Executor,

Defendants,

and

CLL INVESTMENTS LIMITED
PARTNERSHIP, L.L.P.

Nominal Party
Defendant.

**ORDER APPOINTING RECEIVER**

THIS MATTER comes before the Court on Defendants Clyde L. Lail and Gary

N. Lail's ("Defendants") Motion to Appoint Receiver. ("Motion", ECF No. 33.)

THE COURT, having considered the Motion, the briefs in support of and in

opposition to the Motion, the affidavits and other exhibits filed by the parties, the

arguments of counsel at the hearing, and other appropriate matters of record,

concludes that the Motion should be GRANTED based upon the following FINDINGS

and CONCLUSIONS:

**A.      Facts and Procedural Background**

1.      CLL Investments Limited Partnership, L.L.P. ("CLL") is a North

Carolina limited liability partnership formed pursuant to a Certificate of Domestic

Limited Partnership filed with the North Carolina Secretary of State on December 19, 1995. CLL has a written Limited Partnership Agreement, dated December 13, 1995 ("Partnership Agreement"). Clyde L. Lail ("Clyde") and Wilma Lail ("Wilma") were the General Partners of CLL. Plaintiff Rebecca L. Carter ("Rebecca" or "Plaintiff") and Defendants Gary N. Lail ("Gary") and David Lail ("David") are the Limited Partners of CLL ("Limited Partners").

2. The Partnership Agreement was drafted as an estate planning tool for Clyde and Wilma. The partnership was intended to operate under the control and for the benefit of Clyde and Wilma until their passing and, at that time, to be liquidated and divided among Rebecca, Gary, and David. The Partnership Agreement was drafted to provide the General Partners with control of the day-to-day management of CLL's business and affairs, and the Limited Partners were not permitted to participate in the general conduct or control of CLL's affairs and had no right or authority to act for or to bind the partnership.

3. CLL's primary assets are five tracts or parcels of commercial real estate. Other than the real estate, CLL's only assets and liabilities include a checking account, a money market account, and a loan account with Capital Bank. These accounts are used to receive rent payments made to CLL and to pay for maintenance and expenses on the properties. There is no allegation nor any evidence that CLL is insolvent or in danger of becoming insolvent.

4. Section 20.1 of the Partnership Agreement provides, in pertinent part, as follows:

The Partnership shall be dissolved, liquidated, and terminated upon the happening of any of the following events:

\*\*\*

The happening of a Disabling Event with respect to the last remaining General Partner, unless within the sixty-day period immediately following the happening of such Disabling Event, a majority in interest of the Limited Partners consent in writing to continue the Partnership.

(Ver. Compl., ECF No. 3, Ex. A.) Section 5.4 of the Partnership Agreement defines "Disabling Event" as including "the death of any of the Partners." (*Id.*)

5. Wilma died on July 25, 2014, leaving Clyde as the sole General Partner of CLL.

6. On June 16, 2017, Rebecca, directly and derivatively on behalf of CLL, filed a Verified Complaint with the Superior Court of Catawba County. (ECF No. 3.)[1] The Verified Complaint makes numerous direct and derivative claims against Clyde and Gary for, *inter alia*: breach of fiduciary duty and constructive fraud; breach of contract; self-dealing; fraud; and conversion. (*Id.* at ¶¶ 103–60.) The Verified Complaint also contains a "Motion To Appoint Receiver to Manage CLL Until It Can Be Wound Up." (*Id.* at ¶¶ 161–63.) The Verified Complaint alleges that "[d]ue to . . . Gary's self-dealing and motivation to self-deal, Plaintiff moves for appointment of a receiver to protect the assets and expected distributions of CLL." (*Id.* at ¶ 162.)

---

[1] The Verified Complaint is verified under oath by Rebecca, and the Court treats the Verified Complaint as an evidentiary affidavit for purposes of determining the Motion.

7. On August 8, 2017, Clyde died. The majority in interest of the Limited Partners did not consent in writing to continue the partnership. Accordingly, CLL dissolved pursuant to terms of the Partnership Agreement.

8. On May 9, 2018, the Court issued an Order granting Defendants' motion to add David Lail as a necessary party-Defendant and to substitute the Estate of Clyde L. Lail, by Jennifer Noble, successor Executor, as a Defendant. (ECF No. 51.)

9. Since Clyde's death, Rebecca, Gary, and David have been unable to work cooperatively to wind-up the partnership's business and liquidate CLL's assets in an orderly and efficient manner. Defendants contend that Rebecca has refused to cooperate or provide her consent to allow basic decisions to be made for CLL. (Br. Supp. Defs.' Mot. Appoint Receiver, ECF No. 34, at pp. 3–7.) Plaintiff contends that Gary has conflicts of interest making it impossible for him to act in the best interests of CLL, and has withheld or refused to provide Rebecca with essential information regarding the operations and finances of CLL. (Pl.'s Resp. Defs.' Mot. Appoint Receiver, ECF No. 39, at pp. 3–16.)

10. On October 18, 2017, the parties filed their Joint Case Management Report ("CMR", ECF No. 22.) In the CMR, the parties stated that they agreed that the Court should appoint a receiver to wind-up CLL. The parties informed the Court that they were in the process of trying to agree on a receiver and asked that discovery be stayed and that case deadlines be held in abeyance until a receiver could be agreed upon by the parties.

11. On October 26, 2017, the Court held a status conference with the parties to discuss case management deadlines and the appointment of a receiver. Following the status conference, the Court ordered the parties to submit a joint proposal, or the parties' separate proposals, for a receiver by November 30, 2017. (Order Establishing Deadline for Proposed Order Appointing Receiver, ECF No. 24.)

12. The parties were not able to agree on a receiver, and on November 30, 2017, Plaintiff and Defendants submitted their respective proposals for receivers. On January 4, 2018, the Court held a status conference to discuss the competing proposals. At the status conference, the parties informed the Court that they had competing views on how the case should proceed and what the receiver's role should be. On January 8, 2018, the Court denied without prejudice the parties' proposals requesting that a receiver be appointed. (Order Den. Appt. of Receiver, ECF No. 28.)

13. On February 15, 2018, Defendants filed the Motion and the Affidavit of Gary Lail in support of the Motion. (Aff. of G. Lail, ECF No. 35.) Defendants represent that since the lawsuit was initially filed, the Limited Partners have not been able to reach agreement with one another on several issues involved in the management of CLL, including issues related to attempts to sell the real property. (ECF No. 34, at p. 5.)

14. On March 2, 2018, Plaintiff filed a Motion to Amend Complaint, Add Parties, and Consolidate Caveat Action. ("Motion to Amend", ECF No. 36.) With the Motion to Amend, Plaintiff filed a proposed Verified First Amended Complaint, (ECF No. 36.1.), On May 10, 2018, this Court entered an order allowing, in large part, the

proposed amendments. (ECF No. 52.) In the Verified First Amended Complaint, Plaintiff makes direct and derivative claims against Gary, David, and the Estate of Clyde L. Lail arising from the operation of CLL for: breach of fiduciary duties and constructive fraud; breaches of N.C. Gen. Statutes §§ 59-305 and 59-106 (hereinafter "G.S.") for failure to provide records and information related to the partnership; breaches of contract; willful, grossly negligent, reckless and/or wanton mismanagement of CLL and self-dealing; fraud, fraudulent concealment, and/or unjust enrichment; and conspiracy to convert, defraud, and tortiously interfere. (ECF No. 36.1, at ¶¶ 255–369, 382–88.)

15. In the Verified First Amended Complaint, Plaintiff revised her request for appointment of a receiver. Plaintiff expressly requests the dissolution and winding-up of CLL. (ECF 36.1, at ¶¶ 396–402.) Plaintiff, however, no longer alleges that a receiver is needed to protect CLL's assets, but, instead, alleges a receiver should be appointed to "manage CLL's properties" and to pursue legal claims against certain third-parties. (*Id*. at ¶ 402.)

16. On March 7, 2018, Plaintiff filed a brief in opposition to Motion. (Pl.'s Resp. Defs.' Mot. Appoint Receiver, ECF No. 39.) Plaintiff opposes the appointment of a receiver to wind-up and liquidate CLL's assets, claiming that she is "unaware of facts or equities warranting a receiver moving forward." (*Id*. at p. 1.) Plaintiff also contends that, to the extent the Limited Partners are unable to cooperate with one another, it "arises from [Gary's] breach of fiduciary duties owed to Plaintiff, additional tortious conduct after the death of [Clyde], [Gary]'s conflicts of interest,

and opposing counsel's conflicts of interest." (ECF No. 39, at p. 3.) In support of this claim, Plaintiff alleges numerous examples of the continuing strife between Rebecca and Gary since Clyde died. (*Id*. at pp. 8–14.) Despite the continued acrimony, Plaintiff claims that she believes the Limited Partners can cooperatively wind-up CLL. (*Id*. at p. 16.)

17.     On March 16, 2018, Defendants filed their reply brief in support of their Motion. (ECF No. 41.) The Court held a hearing on the Motion on May 1, 2018. The Motion is now ripe for decision.

**B.     Analysis**

18.     The North Carolina Uniform Limited Partnership Act ("ULPA") provides, in relevant part, as follows:

> A limited partnership is dissolved and its affairs shall be wound up upon the happening of the first to occur of the following:
>
> (1)     At the time specified in the certificate of limited partnership or upon the happening of events specified in writing in the partnership agreement; . . . .

G.S. § 59-801(a)(1). The Partnership Agreement provides that CLL "shall be dissolved, liquidated, and terminated upon" the death of the last General Partner. CLL dissolved as a matter of law when Clyde died on August 8, 2017.[2] Accordingly, CLL must be wound-up and its assets liquidated.

19.     Defendants contend that a receiver is needed primarily because Gary, David, and Rebecca are unable to cooperate in the process of winding-up the affairs

---

[2] Accordingly, there is no need for an order of judicial dissolution pursuant to G.S. § 59-802.

of CLL and liquidating its assets. Plaintiff also has requested appointment of a receiver in her First Verified Amended Complaint, but now claims that the Limited Partners can wind-up CLL and liquidate its assets without the assistance of a receiver.

20. A receivership is an equitable remedy. *See, Sinclair v. Moore Cent. R.R. Co.,* 228 N.C. 389, 395, 45 S.E.2d 555, 560 (1947). "Courts of equity have original power to appoint receivers and to make such orders and decrees with respect to the discharge of their trust as justice and equity may require." *Lambeth v. Lambeth*, 249 N.C. 315, 321, 106 S.E.2d 491, 495 (1959) (citing *Skinner v. Maxwell,* 66 N.C. 45, 47–48 (1872) and *Lasley v. Scales*, 179 N.C. 578, 580, 103 S.E.2d 214, 215 (1920)). *See also, Lowder v. All Star Mills, Inc.,* 301 N.C. 561, 576, 273 S.E.2d 247, 256 (1981) ("[I]t is elementary that a Court of Equity has the inherent power to appoint a receiver, notwithstanding specific statutory authorization."); *Barnes v. Kochhar,* 178 N.C. App. 489, 499, 633 S.E.2d 474, 480 (2006) ("A receiver may be appointed by a trial court both pursuant to statute and the trial court's inherent authority.").

21. The ULPA does not expressly provide for appointment of a receiver to wind-up and liquidate a limited partnership. Nevertheless, G.S. § 59-803 provides:

> Except as provided in the partnership agreement, the general partners who have not wrongfully dissolved a limited partnership or, if none, the limited partners, may wind up the limited partnership's affairs; but the court may wind up the limited partnership's affairs upon application of any partner, his legal representative, or assignee.

The Court believes that the language of G.S. § 59-803 supports the proposition that the Court may appoint a receiver "to wind up a limited partnership's affairs," at least

when one or more partners has applied for a winding-up. *See, Piedmont Venture Partners, L.P. v. Deloitte & Touche, L.P.P.*, 2007 NCBC LEXIS 6, at *24–25 (N.C. Super. Ct. Mar. 5, 2007) (discussing court's authority under G.S. § 59-803, upon application of a partner, to appoint a receiver, but appointing receiver pursuant to its inherent equitable authority to wind-up and liquidate a limited partnership where limited partners were unwilling to do so). Here, both parties have applied for a winding-up, and the Court has ample inherent authority, and likely statutory authority, to appoint a receiver.

22. The Court has thoroughly reviewed the briefs and evidence filed by parties and considered the arguments of counsel, and finds and concludes, in its discretion, that the Defendants have established grounds for the appointment of a receiver to wind-up and liquidate the assets of CLL. First, Rebecca is involved in this contentious lawsuit against Gary and David in which she claims that they have engaged in, and continue to engage in, tortious conduct involving the operation of CLL. In addition, evidence demonstrates that the Limited Partners are unable to reach consensus on day-to-day decisions necessary to operate CLL until it can be wound-up and its assets liquidated. There also are indications that the parties will not be able to cooperate in selling CLL's assets. The Court finds that the evidence shows that the Limited Partners are unable to fulfill their obligations to wind-up and liquidate CLL.

23. The Court further finds and concludes that it is necessary to appoint a receiver with general authority to take charge of CLL in order to protect the interests

of any third-party creditors of CLL and the interests of the Limited Partners in receiving any distribution of assets to which they may be entitled.

24.     Accordingly, the Court concludes, in its discretion, that the Motion for Appointment of Receiver should be GRANTED, and a receiver should be appointed to wind-up the affairs of CLL and liquidate its assets.

THEREFORE, IT IS ORDERED that:

## C.     Receiver

25.     For good cause shown, Susan W. Matthews, Esq., of Susan Williams Matthews, PLLC, Conover, North Carolina, is hereby APPOINTED as receiver ("Receiver") for CLL Investments Limited Partnership, L.L.P. ("the Partnership") under the authority and subject to the duties set forth herein, until further order of this Court.   Defendants represent that Ms. Matthews has agreed to accept appointment as the Receiver for the Partnership.

26.     The Receiver will: (1) act in conformity with North Carolina law and rules and orders of the Court; (2) avoid conflicts of interest; (3) not directly or indirectly pay or accept anything of value from the receivership estate that has not been disclosed and approved by the Court; (4) not directly or indirectly purchase, acquire, or accept any interest in the property of the receivership estate without full disclosure and approval by the Court; and (5) otherwise act in the best interests of the receivership estate.

27.     The Receiver shall be compensated at an hourly rate of $175.00 for time reasonably expended on non-legal services as the Receiver, and at an hourly rate of

$250.00 for time reasonably expended on legal services as the Receiver. The Receiver shall be paid for fees and expenses from CLL's assets following notice and approval of such fees by the Court pursuant to the following process:

   a. The Receiver shall prepare and file with the Court requests for payment, with invoices, for her fees and expenses within sixty (60) days of the filing of this Order, and then every sixty (60) days thereafter.

   b. The Receiver's fees must be task-billed, with separate entries for each separate and individual task performed, the date of such task, a description of each task, the amount of time expended performing the task, and a designation of whether the task involves legal or non-legal services.

   c. Any party wishing to object to the Receiver's invoice shall file the objection within five (5) business days following the Receiver's electronic filing of the request for payment on the Court's e-filing system.

   d. The Court will enter an order regarding an award of fees and expenses following filing of the request for payment and after receipt of any objections.

**D.    Authority**

28.    The Receiver shall have full authority of a General Partner, as provided for in the Partnership Agreement, to manage the affairs of the Partnership in the best interests of its creditors and partners, and to carry out the authority and duties herein assigned to the Receiver. In addition, the Receiver shall have the following

specific powers and authority, which, unless otherwise noted below, may be exercised without further order of the Court:

a. To inspect and review the books, records, accounts, or other information maintained by or on behalf of the Partnership as is necessary to perform the duties assigned herein. This includes, but is not limited to, all of the Partnership's financial, accounting, tax, and banking records. Rebecca L. Carter, Gary N. Lail, and David Lail ("the Limited Partners"), and the Partnership's outside attorneys, accountants, and other consultants shall cooperate with the Receiver in providing such records and information as the Receiver may require;

b. To direct payment of costs and expenses necessary to the operation of the Partnership, and to negotiate contracts, debts, and other matters in the normal course of the businesses, including negotiation of payment plans, forbearance agreements, notes in lieu of immediate payment, and similar arrangements;

c. To pay taxes and other governmental obligations and to file all necessary or appropriate returns or documents;

d. To collect obligations owed to the Partnership including revenue received in the normal course of business; and

e. To assume control over and dispose of all or any portion of the Partnership's assets wherever located, at a public or private sale.

29.     If the Receiver believes it is necessary to retain additional attorneys, accountants, or other professionals in the course of performing the duties under this Order, the Receiver shall make a written request to the Court to retain such attorneys, accountants, or other professionals, with a copy of such request to all counsel of record in this lawsuit.[3]  The request shall describe the issues with which the Receiver needs assistance, identify the professional the Receiver proposes to retain, and provide an estimate of the cost for retaining such professional's services.

30.     If the Receiver believes it is necessary to file any lawsuits in the course of performing the duties under this Order, the Receiver shall make a written request to the Court, with a copy of such request to all counsel of record in this lawsuit, prior to filing such action explaining the nature of and reason for the proposed lawsuit.

**E.     Duties**

31.     The Receiver shall also have the following duties:

a.     At the earliest reasonable time after appointment, to investigate and make an accounting of, and prepare a list or report regarding, the Partnership's assets, with each asset's current approximate or estimated value.  For purposes of this Order, "assets" mean any legal or equitable interest in, right to, or claim to, any real or personal property, tangible or intangible, whether individually or jointly, directly or indirectly controlled, and wherever located, including but not limited to: patents, licenses, intellectual property,

---

[3] For the purpose of complying with this section, an informal request sent by email to the Judge's law clerk assigned to this case, with copies to all counsel of record in the case, shall be sufficient.

chattels, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, inventory, checks, notes, accounts, deposit accounts (including, but not limited to, bank accounts and accounts at financial institutions), credits, receivables, lines of credit, contracts, insurance policies, and all cash, wherever located;

b.     Following completion of the investigation called for in paragraph 31(a), to file the written list or report of the Partnership's assets with the Court, and provide copies to the Limited Partners and to the Estate of Clyde L. Lail;

c.     At the earliest reasonable time after appointment, to investigate, identify, and prepare a list or report regarding all debts and obligations of the Partnership, the amount of the debt or obligation, the source of such debt or obligation, whether such obligation is secured or unsecured, whether such debt is current or overdue, the creditor or party to whom the debt or obligation is owed, and other relevant information regarding the debt or obligation;

d.     Following completion of the investigation called for in paragraph 31(c), to file the written list or report of the Partnership's debts and obligations with the Court and provide copies to the Limited Partners and to the Estate of Clyde L. Lail; and

e.     To wind-up the operations and business of the Partnership and to liquidate its assets as provided for in section 20.2 of the Limited Partnership

Agreement. No Partnership funds or assets shall be distributed, however, until all of the saleable Partnership assets have been liquidated.

f.     After the Receiver has liquidated the saleable assets of the Partnership, the Receiver shall file with the Court a report listing the funds and other Partnership assets available for distribution, a certification that the Partnerships debts and obligations have been satisfied, and a recommendation regarding the distribution of the available funds and other Partnership assets.

g.     The Court will issue an order approving and permitting the final distribution of funds and assets.

32.     The parties have represented to the Court that some or all of the Partnership's real property has been listed with a broker or brokers, and that the Partnership already has received expressions of interest from potential purchasers. Nothing in the foregoing authority or duties, including but not limited to the Receiver's duty to investigate and report, will restrict her ability to sell and liquidate the Partnership's real property if the Receiver concludes that the Partnership has been presented with an offer to purchase upon which it must act.

33.     The Receiver shall not be required to post a bond.

F.     **Consultation with Limited Partners**

34.     The Receiver shall consult with, and where reasonably possible, obtain the agreement of all of the Limited Partners for any significant decisions regarding the winding-up of the Partnership and liquidation of its assets including, but not limited to, the sale of the real property. In seeking such consultation and agreement,

the Receiver may impose time limits for the Limited Partners to provide responses. However, the Receiver is not required to obtain agreement from all of the Limited Partners in order to act on behalf of the Partnership and shall have final authority to make all decisions on which she seeks input with or without the agreement of all of the Limited Partners.

**G.    Bond**

35.    Plaintiff requests that the Court require Defendants to post a bond, pursuant to G.S. § 1-502.1, "payable to Plaintiff sufficient enough to secure payment by the applicant of all damages, including reasonable attorney fees, sustained by Plaintiff by the appointment and acts of the receiver if the appointment is vacated or set aside."   The Court, however, has not appointed the Receiver in this action pursuant to the statutory provisions of Chapter 1, Article 38, but instead the Court has appointed the Receiver under its inherent authority.  In addition, Plaintiff does not explain, and the Court cannot conceive of, how the appointment of the Receiver under the circumstances in this case could even potentially result in damages to Plaintiff.  In fact, given Plaintiff's continuing claims that Defendants have engaged in tortious conduct and failed to provide her with information in their operation of CLL, it would seem Plaintiff would welcome the intervention of the Receiver to take control of CLL's affairs.

36.    Nevertheless, Defendants are the party seeking appointment of the Receiver, which Plaintiff now opposes.  Therefore, out of an abundance of caution, the Court will require that on or before 5:00 p.m. on May 25, 2018, Defendants shall post

a bond in the amount of five thousand dollars and no cents ($5,000.00) with, and in a form satisfactory to, the Clerk of Superior Court of Catawba County.  This shall be without prejudice to Plaintiff's right to seek, and the Court's authority to require, an increase in the amount of the required bond upon a satisfactory showing of cause to increase the amount.

37.    This Order shall remain in effect until otherwise ordered by the Court.


SO ORDERED, this the 15th day of May, 2018.


     /s/ Gregory P. McGuire

Gregory P. McGuire
Special Superior Court Judge for
Complex Business Cases