Battles v. Bywater, LLC, 2014 NCBC 51.

STATE OF NORTH CAROLINA

BUNCOMBE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 1853

CHAD A. BATTLES,

    Plaintiff,

v.

BYWATER, LLC, a North Carolina
Limited Liability Company, and
AGIQUA, LLC, a North Carolina Limited
Liability Company,

    Defendants.

ORDER AND OPINION

*Ferikes & Bleynat, PLLC, by H. Gregory Johnson and Joseph A. Ferikes, for Plaintiff Chad A. Battles.*

*Asheville Law Group, by Michael G. Wimer and Jake A. Snider, for Defendants Bywater, LLC and Agiqua, LLC.*

Bledsoe, Judge

{1} **THIS MATTER** is before the Court upon the following motions: (i) Plaintiff Chad Battles' ("Plaintiff") Motion to Disqualify Counsel for Defendants and to Strike Defendants' Answer, Defenses and Counterclaims ("Motion to Disqualify"); (ii) Plaintiff's Motion to Appoint Receiver; (iii) Plaintiff's Motion for Preliminary Injunction; (iv) Defendants Bywater, LLC, a North Carolina Limited Liability Company ("Bywater"), and Agiqua, LLC, a North Carolina Limited Liability Company's ("Agiqua") (together, "Defendants") Motion to Dismiss; and (v) Defendants' Motion to Re-Open Discovery (collectively, "the Motions").

{2} The Court, having considered the Motions, affidavits and supporting briefs, as well as the arguments of counsel at the October 16, 2014 hearing in this

matter, FINDS and CONCLUDES, for the limited purpose of resolving the Motions, as follows:

## FINDINGS OF FACT

{3} Plaintiff and James Rogers ("Rogers") formed Bywater, a North Carolina-based limited liability company ("LLC"), as equal owners and member-managers in April 2010. Bywater operates a tavern for music and entertainment near downtown Asheville, North Carolina.

{4} Plaintiff and Rogers dispute whether their management of Bywater is governed by a valid and enforceable operating agreement. In 2010, Plaintiff printed his name and Rogers' name – with Rogers' permission – in the signature block of a written operating agreement between Plaintiff and Rogers (hereinafter, the "Operating Agreement"), which Plaintiff relied upon to open a bank account for the Bywater business. Plaintiff contends that the Operating Agreement is invalid and that it has not governed Plaintiff's and Rogers' management of Bywater.

{5} Plaintiff and Rogers are equal owners and member-managers of Agiqua, a North Carolina-based LLC that owns the real property on which Bywater conducts its business. Plaintiff and Rogers agree that they have not executed an operating agreement with respect to Agiqua.

{6} Plaintiff and Rogers operated Bywater successfully and without significant dispute until Rogers was involved in a car accident in July 2013. According to Plaintiff, Rogers thereafter began to neglect his responsibilities at Bywater and gradually withdrew his participation in the management of the business. Plaintiff

has submitted affidavits from Bywater employees describing Rogers' conduct during this time period as generally dysfunctional and detrimental to the Bywater business.

{7} Purportedly due to Rogers' behavior and to preserve Bywater's assets, and after consulting Bywater's then counsel, The Hart Law Group, Plaintiff moved the Bywater bank account from Mountain 1st Bank and Trust Company (now First Citizens Bank) to Branch Banking and Trust ("BB&T") in December 2013. Plaintiff moved the account without Rogers' knowledge and advised Rogers that he would be added to the BB&T account only if he agreed to execute a formal written operating agreement for Bywater detailing Plaintiff's and Rogers' respective management responsibilities. BB&T froze the Bywater bank account after Rogers appeared at BB&T seeking access to the account. Plaintiff then moved the Bywater bank account to Forest Commercial Bank (now Carolina Alliance Bank), again purportedly to protect the Bywater funds from Rogers and to ensure that Bywater would have sufficient funds to carry on its business operations.

{8} Rogers retained the Asheville Law Group ("ALG") in March 2014 to represent him personally in his dispute with Plaintiff concerning Bywater.

{9} On April 4, 2014, Mike Wimer ("Wimer") of ALG accompanied Rogers to Forest Commercial Bank, seeking to add Rogers as a signatory to the Bywater account. Forest Commercial Bank responded by freezing the Bywater account.

{10} Plaintiff and Rogers subsequently agreed to deposit all Bywater funds in a jointly accessible account with First Citizens Bank; however, approximately $50,000 in Bywater funds remains frozen in the Carolina Alliance Bank account.

{11} Plaintiff filed his complaint in this action on May 2, 2014, alleging, *inter alia*, that it was "impossible and impractical" for Plaintiff and Rogers to continue operating the Bywater and Agiqua businesses. (Compl. ¶ 10.) Citing "numerous conflicts regarding the management and operation" of both companies, Plaintiff's complaint requests (i) judicial dissolution of both Bywater and Agiqua pursuant to N.C. Gen. Stat. § 57D-6-02; and (ii) the appointment of a receiver pursuant to N.C. Gen. Stat. § 57D-6-04 to manage Defendants' business operations pending the Court's decision on dissolution (and to wind up the businesses in the event that Plaintiff's request for dissolution is granted). (*Id.* ¶¶ 11-13.)

{12} On May 5, 2014, Rogers terminated ALG as counsel in his personal dispute against Plaintiff and that same day retained ALG to represent both Bywater and Agiqua in this lawsuit. Rogers consented on his own behalf and purportedly on behalf of Defendants to ALG's representation of Defendants and signed documents seeking to waive any conflict of interest that may have arisen due to ALG's prior representation of Rogers. Plaintiff did not consent to ALG's representation of Defendants.

{13} On May 15, 2014, Bywater sought to expel Plaintiff as a member of Bywater on grounds that Plaintiff's conduct, including but not limited to Plaintiff's

decision to move the Bywater bank account without Rogers' knowledge in December 2013, warranted Plaintiff's expulsion under the Operating Agreement.

{14} On May 16, 2014, Defendants filed an answer to Plaintiff's complaint, therein asserting counterclaims and moving to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure.

{15} On July 7, 2014, Plaintiff moved to disqualify ALG as Defendants' counsel in this action, contending, *inter alia*, that Rogers, as a fifty percent member of Bywater and Agiqua, lacked the authority to hire ALG to represent Defendants in this matter.

{16} Plaintiff asserts that Rogers has continued to misappropriate Bywater funds, for example, by transferring at least $25,000 in company funds to ALG without Plaintiff's consent. Plaintiff has thus moved the Court for a preliminary and permanent injunction, seeking to prevent Defendants from making further payments to ALG in connection with ALG's representation of Defendants in this matter.

{17} Following a case management conference, the Court entered an Order staying all discovery pending resolution of Plaintiff's Motion to Disqualify. Defendants have since moved the Court to reopen discovery, requesting the opportunity to depose Plaintiff for purposes of gathering information to assist them in their defense against Plaintiff's Motion to Disqualify.

{18}   The Court held a hearing on Plaintiff's Motion to Disqualify, Motion to Appoint Receiver, and Motion for Preliminary Injunction, and on Defendants' Motion to Dismiss and Motion to Re-Open Discovery on October 16, 2014.

## CONCLUSIONS OF LAW

### Plaintiff's Motion to Disqualify

{19}   "'Decisions regarding whether to disqualify counsel are within the discretion of the trial judge and, absent an abuse of discretion, a trial judge's ruling on a motion to disqualify will not be disturbed on appeal.'" *Sisk v. Transylvania Cmty. Hosp., Inc.*, 364 N.C. 172, 179, 695 S.E.2d 429, 434 (2010) (quoting *Travco Hotels, Inc. v. Piedmont Natural Gas Co.*, 332 N.C. 288, 295, 420 S.E.2d 426, 430 (1992)).

{20}   Plaintiff moves to disqualify ALG as Defendants' counsel and to strike all filings submitted by ALG on Defendants' behalf on grounds that Rogers, as a fifty percent (but not majority) member-manager of Defendants, lacked the requisite authority to unilaterally retain ALG to represent Defendants in this matter.  In support of his position, Plaintiff argues that neither Defendant has an operating agreement and therefore relies upon the North Carolina Limited Liability Company Act's ("the LLC Act") provisions that "[e]ach manager has equal rights to participate in the management of the LLC and its business" and that "[m]anagement decisions approved by a majority of the managers are controlling."  N.C. Gen. Stat. § 57D-3-20(b) (2014).

{21} Defendants counter that Rogers properly retained ALG to represent Defendants in this matter. Defendants contend that the default provisions of the LLC Act are inapplicable with respect to Bywater because there exists a valid operating agreement and because Plaintiff's expulsion under the Operating Agreement left Rogers free to hire ALG. Defendants further contend that even if the LLC Act does apply, its provisions support their position that "a single manager [like Rogers here] may bind the company, but his actions may be overridden by majority of managers" and "[w]here [as here] no majority acts to revoke an act taken by a single manager, the manager's decision for the LLC stands." (Defs.' Resp. Pl.'s Mot. to Disq., pg 9.)

{22} An LLC "is a 'statutory form of business organization . . . that combines characteristics of business corporations and partnerships.'" *Crouse v. Mineo*, 189 N.C. App. 232, 237, 658 S.E.2d 33, 36 (2007) (citations and quotation marks omitted) (ellipsis in original). "The [LLC] Act contains numerous 'default' provisions or rules that will govern an LLC only in the absence of an explicitly different arrangement in the LLC's articles of organization or written operating agreement. Because these default provisions can be changed in virtually any way the parties wish, an LLC is primarily a creature of contract." *Id.* (citation omitted).

{23} Where applicable, the default provisions of the LLC Act provide that "[t]he management of an LLC and its business is vested in the managers"; that "[a]ll members by virtue of their status as members are managers of the LLC"; and that "[e]ach manager has equal rights to participate in the management of the LLC and

its business." N.C. Gen. Stat. § 57D-3-20(a)-(b), (d). Further, although the "manager[s] may act on behalf of the LLC in the ordinary course of the LLC's business" and "may make management decisions without a meeting and without notice[,]" this authority is subject to the Act's mandate that "[m]anagement decisions approved by a majority of the managers are controlling." N.C. Gen. Stat. § 57D-3-20(b)-(c).

<u>Bywater</u>

{24} Plaintiff acknowledges that a written operating agreement for Bywater was prepared, but contends that the draft agreement is invalid because neither he nor Rogers ever signed it. Plaintiff thus asserts that the default provisions of the LLC Act govern Plaintiff's and Rogers' management of Bywater. Plaintiff, however, admits affixing his name to the Operating Agreement in his own hand[1] and representing its validity in order to open a bank account for the Bywater business. Having embraced the Agreement at the inception of the LLC's existence, and having failed to show that the parties rescinded or did not intend to be bound by the Agreement thereafter, Plaintiff cannot now unilaterally disavow the Agreement and claim that it has no legal effect. *See, e.g., Redevelopment Com'n of Greenville v. Hannaford*, 29 N.C. App. 1, 4, 222 S.E.2d 752, 754 (1976) ("Where one having the

---

[1] Contrary to Defendants' apparent suggestion, the LLC Act does not require that an operating agreement be in writing or signed by both parties to be valid, N.C. Gen. Stat. § 57D-1-03 (2014) (providing that "the operating agreement may be in any form, including written, oral, or implied, or any combination thereof"); *see also Durham Consol. Land & Improv. Co. v. Guthrie*, 116 N.C. 381, 384, 21 S.E. 952, 953 (1895) (providing that the statute of frauds, where applicable, requires only "that the contract shall be in writing and signed by 'the party to be charged therewith'"); *Yaggy v. B. V. D. Co.*, 7 N.C. App. 590, 598, 173 S.E.2d 496, 501 (1970) (explaining "that a printed name may constitute a sufficient signing under the statute of frauds, provided that it is recognized by the party sought to be charged").

right to accept or reject a transaction or instrument takes and retains benefits thereunder, he ratifies it, and cannot avoid its obligation or effect by taking a position inconsistent with it."); *Adver., Inc. v. Harper*, 7 N.C. App. 501, 505, 172 S.E.2d 793, 795 (1970) (holding that lessee was estopped from denying validity of lease where lessee had paid seven months' rent and accepted benefits under lease). Accordingly, based on Plaintiff's own conduct, the Court concludes that Plaintiff has waived any argument that the Operating Agreement is invalid or unenforceable, and the Court therefore finds that the Operating Agreement governs Plaintiff's and Rogers' management of Bywater.

{25} Prior to inquiring into whether the terms of the Operating Agreement permitted Rogers to hire counsel for Bywater as a fifty percent member-manager, the Court must first consider Defendants' contention that Plaintiff's expulsion from Bywater has rendered Plaintiff without standing to challenge Rogers' selection of ALG as Defendants' counsel.

{26} As an initial matter, Defendants' standing challenge is undermined by the undisputed fact that Rogers retained ALG as counsel for Defendants on May 5, 2014, and Defendants do not claim Rogers expelled Plaintiff until May 15, 2014. As a result, even under Defendants' theory of liability, Rogers was not the sole member of the LLC at the time Rogers sought to hire ALG as counsel for Bywater and thus did not have authority under the Operating Agreement to hire ALG until after Plaintiff's alleged expulsion on May 15.

{27}   In addition, the Operating Agreement provides that a member may be expelled from the company by "members holding a majority of the ownership shares held by members other than the expelled member" where the member is "guilty of wrongful conduct that adversely and materially affects the business or affairs of the company"; " has willfully or persistently committed a material breach of the articles of organization of the company or this agreement"; or "has otherwise breached a duty owed to the company or to the other members to the extent that it is not reasonably practicable to carry on the business or affairs of the company with the member." (Op. Ag. ¶ 7.2.)  Defendants allege that Plaintiff breached the Operating Agreement on numerous occasions, including (i) in December 2013, when Plaintiff moved the Bywater bank account from Mountain 1st Bank and Trust Company to BB&T, thus denying Rogers access to company funds without Plaintiff's consent in contravention of the Operating Agreement; (ii) in February 2014, when Plaintiff signed and represented the validity of a Bywater company resolution – without Rogers' signature to authorize the resolution  – in order to open an account at Forest Commercial Bank; and (iii) from May 2014 through August 2014, when Plaintiff moved certain Bywater funds to a safe located on the Bywater premises, again denying Rogers access to Bywater funds without Plaintiff's consent.

{28}   Although the Court agrees with Defendants that Plaintiff's conduct likely violated his obligations under the Operating Agreement, upon a review of the record, the Court does not find that Plaintiff's conduct met the stringent requirements for expulsion under the Agreement.  In particular, in none of the

instances upon which Defendants rely did Plaintiff convert Bywater funds to his own personal use; rather, as Plaintiff has maintained, the only evidence is that Plaintiff sought merely to safeguard the Bywater funds to ensure the continued operation of the Bywater business and did not use the removed funds for purposes unrelated to Bywater. While the Court does not condone Plaintiff's use of an extra-contractual self-help remedy on these facts, the Court cannot conclude that Plaintiff's conduct in the circumstances here "adversely or materially affected the business affairs of the company," constituted a "willful or persistent material breach" of the Agreement, or otherwise constituted a "breach of duty owed to the company" justifying Plaintiff's expulsion from Bywater.[2] Accordingly, the Court concludes that Defendants have failed to demonstrate that Plaintiff was properly expelled from his role as a member-manager of Bywater; therefore, the Court finds that Plaintiff and Rogers have been at all relevant times and remain fifty percent member-managers of Bywater.[3]

{29} Turning then to Rogers' authority to retain ALG as counsel for Bywater under the terms of the Operating Agreement, the Agreement specifically provides that "[e]xcept as otherwise provided in this agreement, all decisions requiring action

---

[2] Defendants' sole allegation that Plaintiff converted Bywater funds to his personal use – that Plaintiff and his wife "likely misused" Bywater funds to make personal purchases – appears wholly unsupported by the record evidence.

[3] Defendants also contend that Plaintiff is equitably estopped from contesting Rogers' decision to hire ALG because Plaintiff engaged in similar conduct when he sought to engage The Hart Law Group to represent Defendants as counsel in this matter. Defendants' argument lacks merit, however, because The Hart Law Group had historically served as Defendants' counsel, with the mutual consent of Plaintiff and Rogers, and because, unlike Rogers in hiring ALG to pursue claims on behalf of Defendants against Plaintiff, Plaintiff did not seek to retain The Hart Law Group to assert claims on Defendants' behalf against Rogers in his individual capacity.

of the members or relating to the business or affairs of the company will be decided by the affirmative vote or consent of members holding a majority of the ownership interests." (Op. Ag. ¶ 5.2.) The Operating Agreement further describes certain actions that "no member has authority to do . . . without the prior written consent of all other members[,]" including "incur[ring] indebtedness by the company other than in the ordinary course of business" and "authoriz[ing] a transaction involving an actual or potential conflict of interest between a member and the company[.]" (*Id.* ¶ 5.3.)

{30}   Here, Rogers made the unilateral decision to retain ALG to represent Bywater in this matter for the purpose of defending against Plaintiff's claims and asserting counterclaims against Plaintiff. This decision has caused Bywater to incur debt "other than in the ordinary course of business" – indeed, it was represented at the October 16, 2014 hearing that Bywater has incurred legal fees owed to ALG of approximately $85,000 to date in this matter – and, additionally, has created "an actual . . . conflict of interest between a member [i.e., Plaintiff] and the company[.]" Accordingly, because Rogers took these actions without Plaintiff's affirmative vote or consent (i.e., without the "affirmative vote of members holding a majority of the ownership interests"), the Court concludes that Rogers' retention of ALG was in contravention of his authority under the Operating Agreement.

<u>Agiqua</u>

{31}   Plaintiff and Rogers agree that they have not entered into a written operating agreement with respect to Agiqua.  The default provisions of the LLC Act, therefore, govern Plaintiff's and Rogers' management of Agiqua.

{32}   Under the LLC Act, majority approval is required to take extraordinary action on behalf of the LLC of the sort Rogers has sought to authorize here.  *See, e.g., Crouse*, 189 N.C. App. at 239, 658 S.E.2d at 37-38 (applying LLC Act in absence of operating agreement and holding that fifty percent LLC member "lacked authority to cause [the LLC] to institute the . . . action on its own behalf" against the other fifty percent LLC member); *see also Maitland v. Int'l Registries, LLC*, 2008 Del. Ch. LEXIS 70, at *4-5 (Del. Ch. June 6, 2008) (holding that fifty percent LLC member was unauthorized to unilaterally retain counsel on behalf of the LLC and thus disqualifying counsel and striking the LLC's answer where the operating agreement "require[d] action by majority"); *Caplash v. Rochester Oral & Maxillofacial Surgery Assoc., LLC*, 20 Misc. 3d 1104(A), 867 N.Y.S.2d 15, 2008 N.Y. Misc. LEXIS 3519, 2008 NY Slip Op 51216(U) (2008) (following *Maitland* and holding that fifty percent LLC member "had no authority to hire counsel for [the LLC] for any purpose, and certainly not for the purpose of appearing in the action in a militant capacity on one side of a 50-50 split").  To conclude otherwise would leave open the possibility of two equal LLC members each designating competing counsel to represent the same LLC in the same legal action.  *See Maitland,* 2008 Del. Ch.

LEXIS 70, at *3 ("If Guida's interpretation were correct, Maitland would have an equal right to appoint counsel and file an answer on behalf of [the LLC].").

{33} Accordingly, for the reasons articulated above, the Court concludes that Rogers lacked the proper authority to retain ALG as counsel for Agiqua under the circumstances.

{34} Based on the foregoing, the Court hereby GRANTS Plaintiff's Motion to Disqualify and STRIKES all filings submitted by ALG on Defendants' behalf, including but not limited to Defendants' Answer and Counterclaims, Motion to Dismiss, and Motion to Re-Open Discovery, without prejudice to Defendants' right to refile these or other legally supportable and permissible documents after the retention of new counsel.

Plaintiff's Motion to Appoint Receiver

{35} The evidence of record demonstrates that Plaintiff and Rogers are deadlocked with respect to their management of Defendants in that they are unable to agree on even the most basic decisions concerning Defendants' day-to-day operations. In light of this deadlock, Plaintiff requests that the Court appoint a receiver to manage Defendants' business operations pending the Court's decision on dissolution. Defendants, however, oppose the appointment of a receiver for either Defendant. Defendants contend that appointing a receiver is a drastic remedy that is unnecessary in this case because both Bywater and Agiqua operate successful businesses. Defendants further contend that Plaintiff's request for a receiver should be denied because "[a]ppointing a receiver requires a precedent

determination that judicial dissolution may be a remedy[,]" and that, in light of the recent revisions to the LLC Act, Plaintiff's asserted basis for dissolution – management deadlock – is no longer valid. (Defs.' Br. Mot. to Dismiss, pg. 6.)

{36} The LLC Act specifically authorizes a trial court to appoint a receiver "to manage the business of the LLC pending the court's decision on dissolution and if dissolution is decreed by the court to wind up the LLC." N.C. Gen. Stat. § 57D-6-04(a) (2014). N.C. Gen. Stat. § 1-502 also contemplates the appointment of a receiver prior to judgment, providing that a receiver may be appointed where the moving party "establishes an apparent right to property which is the subject of the action and in the possession of an adverse party, and the property or its rents and profits are in danger of being lost, or materially injured or impaired[.]" *Barnes v. Kochhar*, 178 N.C. App. 489, 499, 633 S.E.2d 474, 480-81 (2006) (quoting N.C. Gen. Stat. § 1-502). Additionally, our "Supreme Court [has] indicated that a court of equity has the 'inherent power to appoint a receiver, notwithstanding specific statutory authorization.'" *Williams v. Liggett*, 113 N.C. App. 812, 816, 440 S.E.2d 331, 333 (1994) (quoting *Lowder v. All Star Mills, Inc.*, 301 N.C. 561 576, 273 S.E.2d 247, 256 (1981)); *see also Barnes*, 178 N.C. App. at 499, 633 S.E.2d at 480 ("A receiver may be appointed by a trial court both pursuant to statute and the trial court's inherent authority."). The "appointment of a receiver is within the discretion of the trial court." *Barnes*, 178 N.C. App. at 500, 633 S.E.2d at 481 (citing *Murphy v. Murphy*, 261 N.C. 95, 101, 134 S.E.2d 148, 153 (1964)).

{37} Here, the Court concludes that the appointment of a receiver is appropriate in light of the persisting management deadlock between Plaintiff and Rogers and the accusations of corporate mismanagement and malfeasance each has made against the other. *See, e.g. Assoc. Behavioral Servs. v. Smith*, 2011 NCBC 22 (N.C. Super. Ct. July 8, 2011) (appointing a receiver where two fifty percent shareholders were "hopelessly deadlocked" in the management of their company). While it is true that Defendants' businesses have, thus far, withstood the "falling out" of their two owners, it also true that the discord between Plaintiff and Rogers pervades every aspect of their management of Defendants, thus posing a constant and imminent threat of irreparable damage to Defendants' business operations. The Court notes, moreover, that the limited duration of the requested receivership – only through resolution of Plaintiff's request for dissolution – reduces any perceived detrimental impact of this remedy on Defendants' businesses.

{38} Turning now to Defendants' contention that Plaintiff's request for a receiver is improper because recent amendments to the LLC Act have removed management deadlock as a valid basis for *dissolution*, the Court recognizes that Plaintiff is "not entitled to have [the] ancillary relief [of a receiver] unless [Plaintiff is] entitled to the main relief demanded in [Plaintiff's] complaint." *Maloney v. Alliance Dev. Group, LLC*, 2006 NCBC 11, at *38 (N.C. Super. Ct. Sept. 18, 2006) (quoting *Witz, Biedler & Co. v. Gray*, 116 N.C. 48, 55, 20 S.E. 1019, 1020 (1895)). In other words, the Court's appointment of a receiver here is contingent upon first reaching a determination that Plaintiff will likely succeed on the merits of his claim

for judicial dissolution.  *Id.* (citing, *inter alia*, N.C. Gen. Stat. § 1-502 for the proposition that "North Carolina courts will neither appoint a receiver nor issue a preliminary injunction unless the movant can show a likelihood of success on the merits of his claims").  Accordingly, the Court must consider whether management deadlock remains a valid basis for judicial dissolution under the LLC Act.

{39}   Prior to January 1, 2014, a trial court in North Carolina was authorized under the LLC Act to dissolve an LLC under the following circumstances:

> (1) *the managers, directors, or any other persons in control of the limited liability company are deadlocked in the management of the affairs of the limited liability company, the members are unable to break the deadlock, and irreparable injury to the limited liability company is threatened or being suffered, or the business and affairs of the limited liability company can no longer be conducted to the advantage of the members generally, because of the deadlock*; (2) liquidation is reasonably necessary for the protection of the rights or interests of the complaining member; (3) the assets of the limited liability company are being misapplied or wasted; or (4) the articles of organization or a written operating agreement entitles the complaining member to dissolution of the limited liability company.

*Mitchell, Brewer, Richardson, Adams, Burge & Boughman, PLLC v. Brewer*, 209 N.C. App. 369, 390, 705 S.E.2d 757,772 (2011) (quoting N.C. Gen. Stat. § 57C-6-02(2) (2007)) (emphasis added).

{40}   The enactment of N.C. Gen. Stat. § 57D-6-02, effective January 1, 2014, reformulated the permissible "[g]rounds for judicial dissolution" under the LLC Act as follows:

> The superior court may dissolve an LLC in a proceeding brought by either of the following:
>
> . . . .

> (2)     A member if it is established that (i) it is not practicable to
> conduct the LLC's business in conformance with the operating
> agreement and this Chapter or (ii) liquidation of the LLC is necessary
> to protect the rights and interests of the member.

N.C. Gen. Stat. § 57D-6-02 (2014).[4] Defendants contend that the absence of

any reference to "deadlock" in N.C. Gen. Stat. § 57D-6-02 reflects a conscious

decision by the North Carolina General Assembly to remove deadlock as a

proper basis for dissolution.

{41}   The Court notes initially that the plain language of the LLC Act's

newly adopted grounds for dissolving an LLC where "it is not practicable" to

continue the LLC's operations would appear to embrace, not remove,

management deadlock as a valid grounds for dissolution.  "Statutory

interpretation begins with the plain meaning of the words of the statute[,]"

*Woods v. Moses Cone Health Sys.*, 198 N.C. App. 120, 126, 678 S.E.2d 787,

791 (2009), and it cannot be reasonably argued that continuation of the LLC's

operations is "practicable" where, as in the instant case, the two fifty percent

member-managers are unable to reach agreement with respect to even the

most basic management decisions.

{42}   Further, the "not practicable" standard is nearly identical to the

standard for judicial dissolution under Delaware's LLC Act, which provides

that the Delaware "'Court of Chancery may decree dissolution of a limited

liability company whenever it is *not reasonably practicable* to carry on the

---

[4] N.C. Gen. Stat. § 57D-6-02(1) pertains to dissolution by the North Carolina Attorney General under circumstances not relevant to the instant proceedings.

business in conformity with a limited liability company agreement.'" *In re Mobilactive Media, LLC*, 2013 Del. Ch. LEXIS 26 (Del. Ch. Jan. 25, 2013) (quoting 6 Del. C. § 18-802) (emphasis added).

{43} In *Fisk Ventures, LLC v. Segal*, 2009 Del. Ch. LEXIS 7 (Del. Ch. Jan. 13, 2009), the Delaware Court of Chancery held that there was "more than ample reason" to dissolve an LLC under Delaware's "reasonably practicable" standard where the "undisputed evidence . . . demonstrate[d] the futility of [the LLC's] deadlocked board, the LLC Agreement's fail[ed] to prescribe a solution to a potentially deadlocked board, and [the LLC was in] dire financial straits." *Id.* at *12. In so holding, the Court of Chancery observed that where "a board deadlock prevents the limited liability company from operating or from furthering its stated business purpose, it is not reasonably practicable for the company to carry on its business." *Id.*; *see, e.g., Haley v. Talcott,* 864 A.2d 86, 88-89 (Del. Ch. 2004) (ordering dissolution even though the 50/50-owned LLC was "technically functioning" despite deadlock); *see also Kirksey v. Grohmann*, 2008 SD 76, 754 N.W.2d 825, 830 (S.D. 2008) (ordering dissolution even though the 50/50-owned business could continue despite deadlock). The *Fisk Ventures* court also noted that dissolution may be appropriate even where the LLC is "financially stable" and that dissolution under the "reasonably practicable" standard does not require a "show[ing] that the purpose of the limited liability company has

been 'completely frustrated.'" *Fisk Ventures, LLC*, 2009 Del. Ch. LEXIS 7, at *11-12.

{44} This Court construes the undeniable similarity between our LLC Act's "not practicable" standard and Delaware's "reasonably practicable" standard – which, as discussed above, permits dissolution in instances of management deadlock – as evidence that our Legislature did not intend through its enactment of N.C. Gen. Stat. § 57D-6-02 to remove management deadlock as a valid basis for judicial dissolution. Accordingly, the Court concludes that management deadlock of the sort presented here remains a valid basis for seeking judicial dissolution under the LLC Act. *See Ehrenhaus v. Baker*, 216 N.C. App. 59, 85, 717 S.E.2d 9, 27 (2011) (relying on Delaware law as persuasive in the absence of relevant controlling authority).

{45} In light of the foregoing, the Court concludes that the management deadlock present in the instant case, when coupled with the allegations of both Plaintiff and Rogers that the other has engaged in misconduct and misappropriated Bywater funds, serves as sufficient grounds to justify the appointment of a receiver for Defendants.

{46} Accordingly, the Court GRANTS Plaintiff's Motion to Appoint a Receiver as more specifically provided in this Order and Opinion.

<u>Plaintiff's Motion for Preliminary Injunction</u>

{47} "In order to obtain a preliminary injunction, the movant must demonstrate (1) that it will likely succeed on the merits of its case; and (2) that it will likely

sustain irreparable harm absent the injunction." *Northern Star Mgmt. of Am., LLC v. Sedlacek*, __ N.C. App. __, __, 762 S.E.2d 357, 360-361 (2014) (citing *Ridge Cmty. Investors, Inc. v. Berry*, 293 N.C. 688, 701, 239 S.E.2d 566, 574 (1977)).

{48}    The Court concludes that Plaintiff's claimed injury will be adequately redressed through the Court's appointment of a receiver.  Thus, Plaintiff is unable to demonstrate a likelihood of irreparable harm absent the issuance of an injunction.

{49}    Plaintiff's Motion for Preliminary Injunction is, therefore, DENIED.

{50}    **NOW THEREFORE**, based upon the foregoing **FINDINGS** and **CONCLUSIONS**, it is **ORDERED** that:

{51}    Plaintiff's Motion to Disqualify is GRANTED.

{52}    All filings submitted by ALG on behalf of Defendants in this matter, including but not limited to Defendants' Answer and Counterclaims, Motion to Dismiss, and Motion to Re-Open Discovery, are hereby STRICKEN without prejudice to Defendants' right to refile these or other legally supportable and permissible documents after the retention of new counsel.

{53}    Plaintiff's Motion for Appointment of Receiver is GRANTED as herein provided:

a. The parties shall confer and attempt to reach agreement concerning a joint proposed order appointing receiver ("Joint Proposed Order").  The Joint Proposed Order shall nominate no more than three (3) persons or entities who are willing to serve as a receiver in this matter and shall

specifically set forth in detail the qualifications of each proposed receiver, the rates charged and anticipated costs and expenses associated with each proposed receiver, the allocation of the receiver's costs between the parties, and all instructions, powers and duties the parties request the Court issue to the receiver, including without limitation, all instructions concerning the scope of the receiver's work, the authority of the receiver in performing the receiver's work, the timing and timeframe for the receiver's appointment and work, and all other instructions the parties believe are appropriate. The power and duties of the appointed receiver shall include, *inter alia*, (i) retaining counsel to defend Defendants against Plaintiff's claims in this action; and (ii) pursuing any claims on Defendants' behalf against Plaintiff, Rogers, and/or third parties as necessary to further Defendants' best interests. The Joint Proposed Order shall be submitted within twenty-one (21) days of the entry of this Order and Opinion.

b. In the event the parties are unable to agree upon a Joint Proposed Order, each party shall submit an individual proposed order appointing a receiver ("Individual Proposed Order"), accompanied by a supporting brief, within twenty-one (21) days of the entry of this Order and Opinion. Each Individual Proposed Order shall contain the information described in connection with the Joint Proposed Order in the immediately preceding paragraph.

c. The parties shall serve responsive briefs in opposition to the Individual Proposed Orders, if any, within seven (7) days of service of the supporting brief described in the immediately preceding paragraph.

d. The Court will convene a Case Management Conference after a receiver has been appointed to discuss scheduling and related matters.

{54} Plaintiff's Motion for Preliminary Injunction is DENIED.

**SO ORDERED**, this the 31st day of October, 2014.